BALDWIN and others *v.* BAIRD and others.

*(Circuit Court, N. D. Illinois.* October 19, 1885.

CONTRACT—SALE OF COPYRIGHTED BOOK.

Contract construed, and *held* violated by the sale by defendants of a book infringing the copyright of complainants, or of the original copyrighted work in territory allotted to complainants.

In Equity.

*J. L. High,* for complainants.

*J. B. Leake* and *E. L. Jayne,* for defendants.

BLODGETT, J. The bill in this case charges that the complainants are owners of copyright of a work entitled "Gunn's New Family Physician and Home Book of Health," the copyright of which was secured in the name of John C. Gunn and the firm of Moore, Wilstach, Keyes & Co., and by an agreement between John C. Gunn and this firm the latter and their assigns have the exclusive right to manufacture and print said work, together with the exclusive right to vend said work in all the states north of the Ohio river, and north of the parallel of 36 degrees 30 minutes north latitude, the north boundary line between the states of Pennsylvania and Maryland, commonly known as "Mason and Dixon's line;" that complainants have become possessed of all the rights of the firm of Moore, Wilstach, Keyes & Co. in said copyright and in said contract, and that the defendants, in violation of the rights of complainants, have printed, published, exposed for sale, and sold a work in one volume entitled "Gunn's Newest Family Physician and Home Book of Health, by John C. Gunn, M. D.," knowthat the same is a copy from, and an infringement and piracy of, the said "Gunn's New Family Physician and Home Book of Health," secured by said copyright. The defendants in their answer admit the original copyright in the name of John C Gunn and Moore, Wilstach, Keyes & Co., but insist that the book they are publishing is no violation of said copyright, and deny that complainants by said copyright are entitled to interfere with the book printed, published, and sold by defendants, and further insist that the contract between Dr. Gunn and Moore, Wilstach, Keyes & Co., for a division of territory, and giving said firm the exclusive right to manufacture said books, and the exclusive right of sale in the states and territories north of Mason and Dixon's line, has been abrogated by the refusal of the successors of said firm to manufacture said books at a reasonable rate for the use of the owners of the Gunn interest.

The facts in the case as shown by the testimony are briefly these: In the latter part of the year 1857, Dr. John C. Gunn, then a resident of Cincinnati, Ohio, being the author of a work entitled "Gunn's New Domestic Physician or Home Book of Health: A guide for families, pointing out in familiar language, free from medical terms, the

latest approved method of treating the diseases of men, women, and children, and for using the best new remedies, including medical plants," entered into a contract with the firm of Moore, Wilstach, Keyes & Co., of Cincinnati, by which it was agreed that the copyright for said work should be taken out in the name of said Gunn and said firm, and the said copyright, together with the stereotype plates of said work, were to be held jointly as the property of the said Gunn and the said firm. By this contract Moore, Wilstach, Keyes & Co. were to manufacture and furnish the work to Gunn at cost. Gunn also bound himself by the contract to sell said work exclusively and only in what was termed the "slave states" of the union, except Missouri, or those states lying south of Mason and Dixon's line, and south of the latitude of 36 degrees 30 minutes north latitude; and not to sell said book to dealers, agents, or others residing north of the line so designated, or within the states commonly called the "free states," and the state of Missouri, nor to agents or others designing or intending to send said book north of said line to be there sold again, nor to allow any of his said agents thus to do; but, on the contrary, he agreed to bind and pledge each and every one of his agents for said book, and all that he might appoint to sell the same at any and all times, not to sell said books north of the line designated, nor to sell to others who might want to buy them with a view of taking them north of said line to sell again. It was also agreed by said contract that the northern portion of the United States, or the free states and the state of Missouri, and the territories lying north of the parallel of 36 degrees 30 minutes north latitute, should be, exclusively and solely, ground upon which the said Moore, Wilstach, Keyes & Co. should be allowed to sell said book, and which was to belong to said firm exclusively for said purpose, the same as the slave states, Missouri excepted, were to belong to said Gunn; and each party to said contract bound himself not to trespass, either directly or indirectly, upon the territory belonging to, and by said contract set apart for, the other party.

Moore, Wilstach, Keyes & Co. paid to Gunn $2,000 for their interest in the copyright of said book; and very soon after the contract was made a large edition of the book was published, which the parties commenced to sell in their respective territories. In 1864 a new edition of said book was prepared by Dr. Gunn, and copyrighted by the parties in the same manner as the first edition, and the parties proceeded to sell and dispose of the same in the same manner and upon the same terms provided for in the contract of January, 1857. After the issue of the edition of 1864 the interest of Dr. Gunn in said copyright and contract was acquired by W. H. Moore, one of the defendants herein, and who was also the Moore of the firm of Moore, Wilstach, Keyes & Co., and Mr. Moore, by due assignment, has transferred the interest so acquired from Dr. Gunn to his wife, Anna J. Moore, one of the defendants herein. The firm of Moore, Wil-

stach, Keyes & Co. seems to have passed through some financial vicissitudes since the execution of the contract and the copyright now in question; but the present complainants seem to me, under the proof, to be the successors of said firm of Moore, Wilstach, Keyes & Co., and to fully represent the rights of said firm in said copyright and contract. After Mr. Moore acquired Gunn's interest he withdrew from the firm of Moore, Wilstach, Keyes & Co., selling out to the firm all his interest in the firm assets and property, and, either in his own right or the right of his wife, continued to sell the work in question in the territory assigned by the contract to Gunn until about 1870, when difficulty arose between the firm then representing the rights of Moore, Wilstach, Keyes & Co. and the Moores, as to the price at which books should be manufactured for the Moores, and, after this difficulty had culminated, the Moores caused a reprint of the entire work to be made, with perhaps some additions, but copying bodily the entire matter of the two preceding editions copyrighted by Gunn and Moore, Wilstach, Keyes & Co., and about one year ago the defendants proceeded to actively canvass and offer for sale the book so printed and published by them within the territory set apart to Moore, Wilstach, Keyes & Co. by the contract of January, 1857; and the infringement of the copyright complained of in the bill is the sale of this edition so printed and published at the instance of the Moores in the northern states and territories.

By the original contract between Gunn and the firm the latter was clothed with the exclusive right of printing and manufacturing the books, and was obliged to furnish Dr. Gunn at cost with such copies as he might need for supplying the territory allotted to him; and it is now claimed that inasmuch as difficulties arose between Moore and the present complainants as to what was the fair cost of the books under the terms of the contract, and as the complainants refused to furnish books at what Mrs. Moore and her agents held to be a fair price, that refusal annulled the entire contract, and allowed each party to print and publish, or to vend, within the entire territory. It seems to me, without further discussion of the questions involved in this case, that this is not strictly a copyright case, but the rights of these parties are fixed by the terms of the contract, and a violation, even by the firm of Moore, Wilstach, Keyes & Co., or their successors, of the clause giving them the exclusive right to print and manufacture the book, did not abrogate the terms of the contract in any respect in regard to the division of the territory, as the covenants of the contract were wholly independent; but, on the contrary, if the Moores, or the parties owning the Gunn interest, saw fit to manufacture their own books instead of having them manufactured by the firm, and the firm acquiesced in their so doing, the Moores, or those representing the interest of Dr. Gunn, had no right to invade the territory allotted to the firm, and sell within that territory either the original edition, or any new edition which they might manufacture

or publish containing substantially the work covered by the original copyright. I am therefore of opinion that the complainants by their proof show themselves to be entitled to a decree restraining the defendants from selling the book in question,—either their own edition of it, even if it contains new matter, or any copies of either of the original editions,—within the territory allotted to the firm of Moore, Wilstach, Keyes & Co. by the original contract.